# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ADP, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>ROCCO LaCIVITA,<br><br>　　　　　　　　Defendant. | Case No. 2:21-cv-20001-MCA-CLW<br><br>Assigned to:<br>Judge Madeline Cox Arleo<br>Magistrate Judge Cathy L. Waldor |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

TARTER KRINSKY & DROGIN LLP
Laurent S. Drogin (Bar No. 028951990)
David N. Kleinmann (Bar No. 0445322004)
Jonathan S. Hershberg (Bar No. 023832010)
1350 Broadway – 11th floor
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
ldrogin@tarterkrinsky.com
dkleinmann@tarterkrinsky.com
jhershberg@tarterkrinsky.com
***Attorneys for Defendant Rocco LaCivita***

# **Table of Contents**

**Page**

Introduction ................................................................................................1

Summary ....................................................................................................1

Statement of the Facts ................................................................................2

California Law ..........................................................................................10

Argument ................................................................................................12

I.      ADP IS NOT ENTITLED TO A PRELIMINARY INJUNCTION
        BECAUSE IT IS UNABLE TO SATISFY THE IRREPARABLE
        HARM COMPONENT ................................................................13

        A.      ADP Has Not Shown Any Immediate Irreparable Injury ..................13

        B.      There is No Likelihood of Imminent, or Any, Disclosure of
                Confidential or Trade Secrets Information .........................................16

                1.      ADP has Proffered No Evidence that LaCivita
                        Misappropriated Confidential Information or Trade
                        Secrets .....................................................................................16

                2.      There is No Risk That LaCivita Will Use Any Alleged
                        Confidential Information or Trade Secrets Learned at
                        ADP...........................................................................................18

                3.      ADP Has Not Established a Substantial  Likelihood of
                        Imminent Disclosure ................................................................20

                        a.      ADP Does Not Proffer Any Evidence to Suggest
                                Animus...........................................................................22

                        b.      There is No Likelihood of  Loss of Clients or
                                Other Harms...................................................................22

        C.      ADP's Unexplained Delay Undermines Any Claim of
                Irreparable Harm .................................................................................24

II.     ADP LACKS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON
        THE MERITS BECAUSE IT CANNOT PROVE A BREACH
        OF CONTRACT AND THE RECORD IS INSUFFICIENTLY
        DEVELOPED TO PERMIT THE COURT TO DETERMINE
        THE IMPACT OF CALIFORNIA'S LABOR CODE SECTION 925.........26

        A.     ADP Must Show a Substantial Likelihood of
               Success on the Merits ..........................................................................26

               1.     ADP's Claims Fail for Lack of Harm .......................................27

               2.     California Labor Code Section 925 Invalidates
                      ADP's Claim ..........................................................................28

III.    AN INJUNCTION WOULD CAUSE GREATER HARM TO
        LACIVITA THAN TO ADP .........................................................................31

IV.     THE PUBLIC INTEREST DISFAVORS THE REQUESTED
        INJUNCTIVE RELIEF ..............................................................................32

Conclusion   ..............................................................................................................33

# <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**Cases**

*Acierno v. New Castle County*,
  40 F.3d 645 (3d Cir. 1994) ...............................................................................14

*ADP, LLC v. Pittman*,
  No. 19-16237, 2019 WL 5304148 (D.N.J. Oct. 18, 2019)..................................23

*ADP, LLC v. Rafferty*,
  923 F.3d 113 (3d Cir. 2019) ..............................................................................27

*Amazon.com, Inc. v. Powers*,
  No. C12–1911RAJ, 2012 WL 6726538
  (W.D. Wash. Dec. 27, 2012) ..............................................................................30

*Ariana World Wide Shipping LLC v. Ariana Worldwide USA, Inc.*,
  No. 20-14655, 2021 WL 5106464 (D.N.J. June 29, 2021) .................................14

*Bimbo Bakeries USA, Inc. v. Botticella*,
  613 F.3d 102 (3d Cir. 2010) .........................................................................31, 32

*Cabela's LLC v. Highby*,
  362 F. Supp. 3d 208 (D. Del. 2019),
  *aff'd*, 801 F. App'x 48 (3d Cir. 2020)....................................................................8

*CH20, Inc. v. Bernier*,
  No. C11–5153RJB, 2011 WL 1485604
  (W.D. Wash. April 18, 2011) ..............................................................................30

*CommScope, Inc. v. Rosenberger Tech. (Kunshan) Co. Ltd.*,
  No. 19-15962, 2021 WL 1560717 (D.N.J. Apr. 20, 2021) .................................17

*Cont'l Group, Inc. v. Amoco Chemicals Corp.*,
  614 F.2d 351 (3d Cir. 1980) .........................................................................14, 21

*Diversant, LLC v. Carino*,
  No. 18-3155, 2018 WL 1610957 (D.N.J. Apr. 2, 2018) .....................................29

*Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*,
    No. 19-8828, 2019 WL 1519026 (D.N.J. Apr. 8, 2019) ....................................17

*E.R. Squibb & Sons, Inc. v. Hollister, Inc.*,
    No. 91–203, 1991 WL 15296 (D.N.J. Feb. 5, 1991) ..........................................22

*Exec. Home Care Franchising LLC v. Marshall Health Corp.*,
    642 F. App'x 181 (3d Cir. 2016) .......................................................................12

*Hit Doctor Tri State Arsenal, LLC v. Barth*,
    No. 19-14579, 2020 WL 729152 (D.N.J. Feb. 11, 2020)...................................24

*Hope v. Warden York County Prison*,
    972 F.3d 310 (3d Cir. 2020) ..............................................................................26

*HR Staffing Consultants LLC v. Butts*,
    627 Fed. App'x 168 (3d Cir. 2015) ....................................................................23

*IDT Corp. v. Unlimited Recharge, Inc.*,
    No. 11–4992, 2011 WL 6020571 (D.N.J. Dec. 2, 2011)....................................18

*Jackson Hewitt Inc. v. Cline*,
    No. 14-6931, 2015 WL 6687545 (D.N.J. Oct. 29, 2015)...................................22

*Julius Realty Corp. v. Thompson*,
    No. 20-4575, 2020 WL 2539188 (D.N.J. May 19, 2020) ..................................13

*Mallet & Co. Inc. v. Lacayo*,
    16 F.4th 364 (3d Cir. 2021) ........................................................................14, 19

*NASC Servs., Inc v. Jervis*,
    No. 07–CV–5793, 2008 WL 2115111 (D.N.J. May 19, 2008) ..........................17

*Nat'l Starch & Chem. Corp. v. Parker Chem. Corp.*,
    219 N.J. Super. 158, 530 A.2d 31 (App. Div. 1987) ..........................................23

*New Jersey Physicians United Reciprocal Exch. v.*
*Arthur J. Gallagher & Co.*,
    No. 18–04110, 2018 WL 3054686 (D.N.J. June 20, 2018)..........................25, 27

*Novell Inc. v. Timpanogos Research Group Inc.*,
    No. 970400339, 1998 WL 177721 (D. Utah Jan. 30, 1998) ..............................23

*Osteotech, Inc. v. Biologic, LLC*,
   No. 07–1296, 2008 WL 686318 (D.N.J. Mar. 7, 2008) .....................................22

*Pierman v. Stryker Corp.*,
   No. 3:19-cv-00679, 2020 WL 406679 (S.D. Cal. Jan. 24, 2020).......................30

*ProFoot, Inc. v. MSD Consumer Care, Inc.*,
   No. 11–7079, 2012 WL 2262904 (D.N.J. June 14, 2012).................................17

*Reilly v. City of Harrisburg*,
   858 F.3d 173 (3d Cir. 2017) ........................................................................13, 26

*Rotante v. Franklin Lakes Bd. of Educ.*,
   No. 13–3380, 2014 WL 3778912 (D.N.J. Jul. 31, 2014) ..................................27

*Sandhills Global, Inc. v. Garafola*,
   No. 19-17225, 2019 WL 4143015 (D.N.J. Aug. 30, 2019)...............................24

*Sandhills Global, Inc. v. Garafola*,
   No. 19-20669, 2020 WL 1821422 (D.N.J. Apr. 10, 2020) ...............................24

*Smith v. Biden*,
   No. 1:21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021)...................16, 17

*StrikeForce Techs., Inc. v. WhiteSky, Inc.*,
   No. 13–1895, 2013 WL 2658859 (D.N.J. June 11, 2013).................................22

## Statutes

Cal. Bus. & Prof. Code § 16600 ............................................................................28

Cal. Lab. Code § 925 ..................................................................................*passim*

## Introduction

Defendant Rocco LaCivita ("LaCivita"), by his attorneys, Tarter Krinsky & Drogin LLP, submits this memorandum of law in opposition to the motion for a preliminary injunction sought against him by his former employer, ADP, Inc. ("ADP").

## Summary

LaCivita resigned his employment with ADP on September 2, 2021, and started work with Ceridian on September 7. LaCivita's job with Ceridian is materially different from the one he held at ADP. He explained this to ADP's counsel in an email on September 22. Without any further communications from ADP, this lawsuit was filed on November 15, and the motion for a preliminary injunction followed on November 17.

Other than claiming that his employment with Ceridian violates a 12-month non-compete, ADP does not allege that LaCivita has done anything wrong. Instead, it claims that this employment alone violates an array of other covenants for which it seeks emergent relief.

ADP's position rings hollow as it cannot demonstrate it will suffer any harm, much less immediate irreparable harm (none is articulated). There also is a low likelihood of success on the merits based both on the factual record and a California

statute that precludes enforcement of the non-compete. The elements necessary to obtain injunctive relief being lacking, the motion should be denied.

This case is strikingly similar to one argued by these same attorneys before Judge Wigenton on May 25 of this year. During that argument, in *ADP, Inc. v. Levin*, No. 2:21-CV-10574, Mr. Lowe recognized that: "[i]f ADP cannot enforce its restrictive covenant agreements against a highly compensated corporate officer like Mr. Levin, who has knowledge and oversight of ADP's most sensitive competitor information, then, frankly, Your Honor, its [restrictive covenant agreements] are worthless." (Declaration of Laurent S. Drogin, dated December 13, 2021 ("Drogin Decl."), Ex. A, at 9.) Judge Wigenton <u>denied</u> ADP's application for emergency injunctive relief.

Mr. Levin was ADP's <u>Chief Strategy Officer</u> who left ADP to work for a competitor. Perhaps Mr. Lowe's candor was intended as hyperbole, but it makes the point in this case where LaCivita, unlike Mr. Levin, was not "one of ADP's top ten executives," (*Id.* at 6), and is not accused of doing anything wrong other than going to work elsewhere.

<u>**Statement of the Facts**</u>

Since 2016, LaCivita held various positions within ADP, and in exchange for certain stock grants, signed covenant agreements each year from 2016-2020. In March 2019 he assumed the role he held until he left ADP. As explained more fully

below, he oversaw 7 employees who, when called on by account representatives, would attempt to sell certain of ADP's products to a specific target market. LaCivita's current role does not impact the same market or clients.

Mr. LaCivita's 2020 restrictive covenant agreement ("2020 RCA") contains covenants that limit his ability to do several things: (i) for a period of 12 months after the termination of his employment, he cannot: (a) solicit ADP's clients, employees, or business partners whom he had "solicited or contacted on behalf of ADP" in the last 2 years before his employment was terminated or about whom he had learned confidential, proprietary or trade secret information while employed at ADP; (b) induce or encourage any ADP vendor to cease doing business; or (c) provide the "same or similar services . . . as those which [he] provided to ADP while employed"; or (ii) take, use or disclose ADP's confidential information.[1] (Declaration of Rocco LaCivita, dated December 13, 2021 ("LaCivita Decl."), Ex. A §§ 4-7.)

LaCivita was aware of this language and took care to ensure that his new position would not run afoul of his agreement. (LaCivita Decl. ¶¶ 3, 5, 8.)

---

[1]   The 2020 RCA contains both 12-month and indefinite restrictions on LaCivita's use and disclosure of ADP's confidential and trade secrets information. (LaCivita Decl., Ex. A, §§ 4, 7.)

3

While ADP asserts LaCivita has engaged in "wrongful conduct," its papers reflect that, other than the non-compete, no facts support a claim that the 2020 RCA has in any way been violated. ADP <u>does not claim</u> LaCivita:

> ➤ Took any materials forbidden by his agreement

> ➤ Possesses such materials

> ➤ Provided any such materials to Ceridian

> ➤ Used any such materials

> ➤ Solicited any client to end its business relationship with ADP

> ➤ Caused any ADP client with whom he interacted to move business to Ceridian

> ➤ Solicited any ADP employee to resign

> ➤ Assisted any ADP employee in joining Ceridian

> ➤ Solicited any ADP business partner or vendor

> ➤ Caused any ADP business partner or vendor to move its business to Ceridian.

There is no claim that LaCivita has done any of these things. (*Id.* ¶ 5.)

Upon receiving a communication from ADP's attorneys on September 20 regarding his employment with Ceridian, LaCivita responded on September 22, explaining the dissimilarities between his new and former positions:

> [m]y new role and territory differ significantly from the role held at ADP. My vertical is now limited to 10,000+

> [employees] focusing on global companies. My role with
> ADP was 1,000+ [employees], with roughly 90% being
> UNDER 10,000 focusing on shared services/BPO. This is
> not the same role nor the same client base that I will be
> pursuing for Ceridian.

(LaCivita Decl., Ex. B.)

ADP never responded. (LaCivita Decl. ¶ 13.) It sought no additional information or clarification and did not object in any way. (*Id.*) Instead, it waited until November 15 and filed this lawsuit. (*Id.*) Based on LaCivita's reading and understanding of the non-compete, the position he was accepting at Ceridian did not require him to "provide the same or substantially similar services" as he had been at ADP. (*Id.* ¶ 8.) Nor does ADP claim he is, other than through vague and broad conclusory statements unsupported by any specific facts.

LaCivita's last position at ADP, which he held for more than 2 years, from March 2019 through September 2021, required him to supervise a team of 7 employees who interacted with account representatives to sell products to new or existing clients. (*Id.* ¶¶ 31-35.) Neither LaCivita nor his team had any responsibility to originate new clients, and they did not interact with clients unless brought in by an account representative to do so. (*Id.* ¶¶ 32-35.) Even then, LaCivita himself did not interact with clients unless his assistance was specifically needed. (*Id.* ¶ 35.) The only clients that LaCivita and his team worked with at ADP were U.S.-based operations of U.S.-based companies. (*Id.* ¶ 30.) 97% of the clients (about 1,950)

were companies with less than 10,000 employees. (*Id.* ¶ 37.) Roughly 3% (60 clients) were companies with more than 10,000 employees. (*Id.* ¶ 38.) Of those 60 clients, LaCivita interacted with exactly <u>one</u>, for which he attended a presentation in 2019. (*Id.* ¶ 39.) LaCivita presently deals with zero of these clients, nor will he have the need to deal with them at Ceridian. (*Id.* ¶¶ 20-21, 25-26, 30, 37-39, 42, 48.)

At Ceridian, LaCivita has worked exclusively with the foreign operations of U.S.-based companies with more than 10,000 employees. (*Id.* ¶ 30.) At ADP, LaCivita had nothing to do with foreign markets. (*Id.*) And LaCivita no longer works with any of the sub-10,000 employee companies with which he interacted while employed at ADP. (*Id.* ¶¶ 26, 37.) He has neither a reason nor any need to interact with any of these ADP clients. (*Id.* ¶¶ 30, 37-39.) <u>There is no overlap in LaCivita's roles at ADP and Ceridian</u>.

The distinction in the size of clients with which LaCivita is working (under 10,000 at ADP and over 10,000 at Ceridian) is also important. (*Id.* ¶ 16.) Clients fall into one of three tiers: Under 1,000 employees, 1,001-9,999 employees, and 10,000+ employees. (*Id.* ¶ 17) ADP and Ceridian offer many different products and services to clients. (*Id.*) Clients are differentiated because certain products, services, strategies, and myriad other factors are geared towards the size of the workforce. (*Id.*) To take just one example, ADP uses different software platforms depending on whether a client has more or less than 10,000 employees. (*Id.* ¶¶ 18-19.)

6

Companies with more than 10,000 employees do not decide overnight or after a rough week to switch from ADP to Ceridian or vice versa. (*Id.* ¶ 23.) This is typically a lengthy process that results in contracts ranging from three (3) to five (5) years. (*Id.*)

Stepping back, it may well be that none of the clients with whom LaCivita interacted at ADP even have contracts expiring before his covenant does on September 7, 2022. (*Id.* ¶¶ 24-25.) Not that this would matter, as he does not deal with any of them for Ceridian.

Also, "goodwill" at the 10,000+ client tier is very dissimilar from that with smaller businesses. (*Id.* ¶ 28.) There is no such thing as "brand loyalty" at this level. (*Id.*) Companies with more than 10,000 employees—including existing ADP and Ceridian clients—commonly issue requests for proposals ("RFPs") into the marketplace where companies such as ADP, Ceridian, Oracle, Paycor, SAP and others <u>are invited by these clients to have competitors bid for their business</u>. (*Id.*)

ADP contends LaCivita would be compelled to "inevitably disclose" information he learned while at ADP. But ADP does not identify that information in any meaningful way, account for the fact that LaCivita is not working with any of the same clients, or explain how such information would be of any use to him or Ceridian. (*Id.* ¶¶ 5, 8, 12-13, 29, 40-43, 45-49.) This was a key point noted by Judge Wigenton in *Levin*, where ADP's request for an injunction was denied.

7

Also ignored is LaCivita's affirmative statement in his September 22 email: "I can further confirm that I have not and will not violate my confidentiality obligations to ADP." (LaCivita Decl., Ex. B.) Now three months into his 12-month covenant, ADP can still point to nothing LaCivita has disclosed, or identified anything it believes he will disclose. (LaCivita Decl. ¶¶ 40-43, 45-49.) ADP's entire disclosure theory is speculative. (*Id.*)

ADP also fails to account for the fact that the information it identifies as being at risk diminishes in value and significance over time. *See Cabela's LLC v. Highby*, 362 F. Supp. 3d 208, 225 (D. Del. 2019), *aff'd*, 801 F. App'x 48 (3d Cir. 2020) (the value of confidential information "inevitably decrease[s] over time"). ADP's sales associates, pricing models, and planned improvements change frequently. (LaCivita Decl. ¶ 48.) Whatever information LaCivita has is three months old, and there is no claim he has used, is using or will use any of this information that becomes less useful to everyone—including ADP—over time. (*Id.*)

As a publicly traded company ADP recognizes today's news becomes tomorrow's history. (*Id.* ¶ 49.) Its motion papers stand in contrast to its most recently filed Annual Report in which it acknowledged to the SEC and its shareholders that its:

> businesses operate in industries that are subject to rapid technological advances and changing client needs and preferences. In order to remain competitive and responsive to client demands, we continually upgrade, enhance, and

> expand our technology, solutions and services. If we fail
> to respond successfully to technology challenges and
> client needs and preferences, the demand for our solutions
> and services may diminish.

(https://www.sec.gov/ix?doc=/Archives/edgar/data/0000008670/00000086702100
0027/adp-20210630.htm, at 20-21.)

In the *Levin* case mentioned above, the same ADP counsel before the Court

today represented to Judge Wigenton that Mr. Levin "knew more than almost anyone

about ADP's business, including all of its strengths and weaknesses. . . . He knows

what works and what doesn't work at ADP, and he knows where ADP is headed

over the next three years." (Drogin Decl., Ex. A, at 7.) Judge Wigenton denied the

request for injunctive relief for the same reasons present here:

- As to likelihood of success on the merits: "there is nothing in any

  certification or submission, that would indicate that there has been any

  business that has been lost by ADP or that there, in fact, was any client that

  has been taken or some information that has been shared by Mr. Levin."

  (*Id.* at 39.)

- As to irreparable harm: "[t]here is a lot of talk about proprietary

  information. None has been outlined for the Court. . . . So the Court is left

  to speculate and/or suppose as to exactly what that consists of." (*Id.* at 41.)

- There has been "much talk about what Mr. Levin can do. He might do this. He has the potential, ability to do that. There has been nothing that has been presented to the Court that he has done it." (*Id.* at 42.)

LaCivita was well below Mr. Levin in rank. Judge Wigenton's words can be echoed in this case, as the lack and absence of any wrongdoing by LaCivita is the same.

## California Law

But what is not the same as in the *Levin* case is that LaCivita and his family have resided in California since 2012. (LaCivita Decl. ¶ 51.) According to its website, ADP has offices in 35 states, including California. (https://www.adp.com/about-adp/office-locations.aspx.) (LaCivita Decl. ¶ 59.) In fact, its 15 California offices are the largest number it has in any state. (*Id.*)

LaCivita assumed his last position with ADP in March 2019 and signed covenant agreements both in 2019 and 2020.[2] On January 1, 2017, Section 925 of California's Labor Code took effect. The law, which is part of a chapter entitled, "Contracts Against Public Policy," governs contracts "entered into, modified, or extended" after that date. Cal. Lab. Code § 925(f). Section 925 dramatically limits an employer's ability to require an employee to enter an agreement that includes an

---

[2]     Prior agreements signed in 2016, 2017 and 2018 involved roles further unrelated to his last role at ADP, and further removed from his position at Ceridian. (LaCivita Decl. ¶ 11.)

out-of-state choice of law and/or forum selection clause and provides, in relevant

part:

> (a)     An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do the following:
>
>> (1) Require the employee to adjudicate outside of California a claim arising in California.
>>
>> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b)     Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Section 925 authorizes an employee enforcing their rights to obtain injunctive

relief (and any other available remedies) and attorney's fees. Cal. Lab. Code § 925(c).

LaCivita's 2020 agreement, signed on September 22, 2020, provides in

relevant part:

> <u>To the extent permitted by the law of the state in which I reside</u>, the interpretation, validity, and enforcement of this Agreement will be governed by the laws of the State of New Jersey, without regard to any conflicts of law principles. I agree that, <u>to the extent permitted by the law of the state in which I reside</u>, any action by me to challenge the enforceability of this Agreement must be brought or litigated exclusively in the appropriate state or federal court located in the State of New Jersey. I also agree that any action by ADP to enforce this Agreement, as well as any related disputes or litigation related to this Agreement may be brought in the appropriate state or federal court located in the State of New Jersey.

(LaCivita Decl., Ex. A, § 10 (emphasis added).)

No attorney could, with a straight face, argue before this Court that California law does not prohibit exactly that which ADP asks the Court to do here. Indeed, ADP is ignoring its own contract language by wrongly insisting that New Jersey law be applied to this dispute. While the choice of law issue itself is not before the Court at this time, this conflict of laws guts the likelihood of success on the merits that ADP must show to obtain an injunction.

The Court should also note that the language quoted by ADP on page 13 of its brief is <u>not</u> from the 2020 agreement, as is claimed on page 8 of their brief.[3] *See* LaCivita Decl., Ex. A. We assume this to be an inadvertent error, rather than an attempt to mislead the Court.

## <u>Argument</u>

The standards for granting the extraordinary remedy of a preliminary injunction are clear. To obtain a preliminary injunction, the movant must establish "(1) a likelihood of success on the merits; (2) he or she will suffer irreparable harm if the injunction is denied; (3) granting relief will not result in even greater harm to the nonmoving party; and (4) the public interest favors such relief." *Exec. Home Care Franchising LLC v. Marshall Health Corp.*, 642 F. App'x 181, 183 (3d Cir. 2016)

---

[3]   ADP incorrectly states: "[t]he 2020 RCA includes the following pertinent provisions …." What follows on page 13 is language from a different agreement. The quoted language excludes the "to the extent permitted by the law of the state in which I reside" exception relevant here.

(quoting *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010)). "The first two factors are the 'most critical,' and the Court considers these 'gateway factors' before the third and fourth factors. [] Only if a plaintiff meets the threshold for these gateway factors does the Court consider the remaining factors." *Julius Realty Corp. v. Thompson*, No. 20-4575, 2020 WL 2539188, at *1 (D.N.J. May 19, 2020) (internal citations omitted).

For ADP to "meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely that not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Only after satisfying these two steps should the court turn to the remaining two, and then view the weight of all four factors together and apply its sound discretion. *Id.*

ADP cannot satisfy either of the first two factors. Even if it could, the remaining factors, taken together, should cause the Court to deny the injunctive relief sought.

## I.   **ADP IS NOT ENTITLED TO A PRELIMINARY INJUNCTION BECAUSE IT IS UNABLE TO SATISFY THE IRREPARABLE HARM COMPONENT**

### A.   **ADP Has Not Shown Any Immediate Irreparable Injury**

ADP must establish a "'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; [an injunction] may not be used simply to eliminate

a possibility of a remote future injury . . ..'" *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (quoting *Cont'l Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980)). "We must protect that which is protectable, but, in doing so, we must limit the use of injunctive relief to situations where it is necessary to prevent immediate and irreparable injury. The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat[.]" *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 389 (3d Cir. 2021) (quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969)). "[T]he feared harm must be 'immediate' and not merely speculative." *Ariana World Wide Shipping LLC v. Ariana Worldwide USA, Inc.*, No. 20-14655, 2021 WL 5106464, at *2 (D.N.J. June 29, 2021) (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). "[G]eneral allegations of future harm are not sufficient to show irreparable harm." *Id.* at *2 n.3.

More than a risk of irreparable harm must be demonstrated. "Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties. Nor will an injunction be issued to restrain one from doing what he is not attempting and does not intend to do." *Cont'l Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

The facts here align perfectly with the cases above to evidence why ADP's motion should be denied. At the outset, a careful review of the moving papers reveals

that LaCivita is not alleged to have engaged in any conduct violative of any covenant, other than joining Ceridian.

There is no allegation that he has taken, possesses, or has used confidential information. He is not alleged to have contacted any client or taken any business from ADP. Nor is he alleged to have been involved in the departure or any ADP employee. ADP's entire legal theory for its motion is speculative and based not on what has happened or is happening, but what may happen. That is as far removed from "clear and immediate" as one could imagine, and completely aligned with the "fears," "apprehensions," and "anxieties" that cannot support injunctive relief. There is not a single fact to support the claim that there is any harm, much less immediate and irreparable harm.[4]         As Judge Wigenton expressed in *Levin*, in denying ADP's request for a preliminary injunction: there is "much talk about what Mr. Levin can do. He might do this. He has the potential, ability to do that. There has been nothing that has been presented to the Court that he has done it." (Drogin Decl., Ex. A, at 42.) The exact same situation exists here.

---

[4]      If the Court is inclined to grant a preliminary injunction to remedy this "irreparable harm" then ADP should be required to post a bond in an amount that would require the disclosure of the risk of this harm as "material" on its SEC filings. If Mr. LaCivita has the ability to irreparably harm a company with $16 billion in annual sales, its shareholders and auditors should know about it.

**B.**     **There is No Likelihood of Imminent, or Any,**
           **Disclosure of Confidential or Trade Secrets Information**

It bears repeating that ADP does not claim LaCivita has done anything wrong, or that he is doing anything improper regarding its confidential information or trade secrets. Nothing. Its argument is based on the "inevitable disclosure" doctrine. But that argument fails for four reasons: (i) other than in broad terms, ADP has not identified any trade secrets or confidential information; (ii) its argument is based on the faulty assumption that LaCivita's role requires that he use such information; (iii) this case does not fit the mold where ADP has successfully enjoined wrongdoers; and (iv) there is no claim (much less evidence) that any information has been disclosed or is imminently going to be disclosed.

**1.  ADP has Proffered No Evidence that LaCivita**
       **Misappropriated Confidential Information or Trade Secrets**

An inevitable disclosure argument "is predicated on the existence of . . . confidential, proprietary and/or trade secret information." *IDT Corp. v. Unlimited Recharge, Inc.*, No. 11–4992, 2011 WL 6020571, at *8 n.7 (D.N.J. Dec. 2, 2011). The argument must fail if "the Court cannot discern from either the face of the complaint or the papers submitted in support of the instant application what specific confidential, proprietary, and/or trade secret information may be subject to inevitable disclosure." *Id.* (Emphasis added).

16

This was the same fact pattern in *Levin*: "There is a lot of talk about proprietary information. None has been outlined for the Court. . . . So the Court is left to speculate and/or suppose as to exactly what that consists of." (Drogin Decl., Ex. A, at 41.)

This case is not about ADP's market strategy, the next big thing, or new software. The only showing on this issue is a conclusory statement that LaCivita "obtained intimate and critical knowledge. . . of ADP's confidential, trade secret, and proprietary information," followed by a laundry list of general topics, such as "software, services, techniques, strategic business plans, client and prospect lists, client preferences . . .." (Declaration of Jennifer Webb, ECF 5-4, ¶ 6.). These are generic labels, not evidence.

ADP's "statement of protected material is better characterized as a list of general categories of business and technical information, a list that could be used to describe documents found in any number of corporations." *Mallet*, 16 F.4th at 382. ADP "fails to explain how we or anyone else is to distinguish between what is generally known or available information and what it contends to be protectable trade secrets. With a wave of the hand, it declares everything to be secret know-how." *Id.* at 383. "It is the trade secret owner that bears the burden of demonstrating its claimed secrets are protectable and are not general industry knowledge." *Id.* at 387. ADP's "very general description of categories does not sufficiently identify the information

it claims as a trade secret . . . and thus does not suffice to justify" the injunction it has requested. *Id.*

### 2. There is No Risk That LaCivita Will Use Any Alleged Confidential Information or Trade Secrets Learned at ADP

The closest ADP comes to identifying a risk of inevitable disclosure is its claim that, at Ceridian, LaCivita is "responsible for . . . the same geographic territory" and is "selling the same types of products and services" to ADP's clients and prospective clients as he had at ADP. (ECF 5-1 at 3-4.) But ADP does not cite to a single fact to support that claim. For good reason: it is false.

At ADP, LaCivita worked almost exclusively on the U.S.-based operations of companies with less than 10,000 employees. (LaCivita Decl. ¶¶ 30, 37-39.) (He had a single substantive interaction—attendance at a presentation in 2019—with an ADP client that has more than 10,000 employees.) (*Id.* ¶ 39.) He had no responsibility for foreign markets. (*Id.* ¶ 30.) By contrast, at Ceridian, LaCivita works exclusively on the foreign (not U.S.-based) operations of a separate set of clients who have more than 10,000 employees. (*Id.*) In short, LaCivita's job functions at Ceridian are entirely different from his job functions at ADP, as he is selling different products and services, to different clients, in a different geographic territory than he did at ADP.

Consequently, there is no possibility that LaCivita will inevitably disclose any trade secrets or confidential information to Ceridian about clients with less than 10,000 employees in the U.S. The concept of "territory" here is meaningless.

18

*Levin* is again instructive here. ADP argued Mr. Levin "was exposed to and he oversaw the strategy related to growth, technology, investment planning, partnerships, and mergers and acquisitions, and he directed the preparation of the strategic plan." (Drogin Decl., Ex. A, at 6.) ADP described Levin as being deeply, perhaps uniquely, knowledgeable about ADP: "he knew more than almost anyone about ADP's business, including all of its strengths and weaknesses." (*Id.* at 7.) "He knows what works and what doesn't work at ADP, and he knows where ADP is headed over the next three years." (*Id.*) ADP argued that it needed to enjoin Mr. Levin because "[w]e don't want him to be able to use the confidential information that he learned about ADP's strengths and weaknesses to help" its competitor. (*Id.* at 13-14.)

No injunction was granted as the law does not restrain "what ifs." As Judge Wigenton held, in denying the injunction, "The simple assertion that [Mr. Levin] clearly has to have some valuable information that he will share" fell far short of demonstrating a basis for finding inevitable disclosure: "obviously, the law and the caselaw and the precedent requires more than that." (*Id.* at 39.)

The *Levin* court also noted that ADP had not met its burden of showing that Mr. Levin's job functions at ADP were the same as at his new company. (*Id.* at 40.) Here, ADP has known the differences since September but sued anyway.

### 3.  ADP Has Not Established a Substantial Likelihood of Imminent Disclosure

ADP cannot establish irreparable harm based on "inevitable disclosure" unless it shows there is a substantial likelihood of the imminent disclosure of its confidential or trade secret information. *Cont'l Group*, 614 F.2d at 358-59 (the risk of a disclosure is not sufficient; "[t]here must be an imminent threat of the allegedly harmful disclosure" of confidential information); *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13–1895, 2013 WL 2658859, at *5 (D.N.J. June 11, 2013) (denying an injunction because "Plaintiff cannot demonstrate an imminent threat of disclosure" of trade secrets); *E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, No. 91–203, 1991 WL 15296 (D.N.J. Feb. 5, 1991) (there must be a "substantial threat of impending injury" from a disclosure).

New Jersey courts that have found a sufficient likelihood information will inevitably be disclosed—including all the cases cited by ADP for this issue—have done so only where the party seeking an injunction presented evidence that one or more of three circumstances existed: (i) the departing employee misappropriated trade secrets or confidential information; (ii) the employee had an animus against the former employer that would motivate a disclosure; and/or (iii) the employee's new job functions were so similar to its job functions at the previous employer that

20

information gained at the latter will be used for the former. The facts in this case

resemble none of ADP's cited precedent. [5]

---

[5]      *See Osteotech, Inc. v. Biologic, LLC*, No. 07–1296, 2008 WL 686318, at *3-
4 (D.N.J. Mar. 7, 2008) (asserting a trade secret misappropriation claim, plaintiff
alleged its former employees misappropriated trade business plans and other trade
secrets and used them to develop a competing business); *Jackson Hewitt Inc. v.
Cline*, No. 14-6931, 2015 WL 6687545, at *1,4 (D.N.J. Oct. 29, 2015) (the former
employee retained the former employer's client files and used them to provide
services to the former employer's clients; the court found a likelihood that the former
employee would use or disclose the information contained in the client files); *HR
Staffing Consultants LLC v. Butts*, 627 Fed. App'x 168, 171, 173-74 (3d Cir. 2015)
(finding "concrete risk" of disclosure based on the animus of the defendant former
employee, who had been denied a written waiver of his restrictive covenant that
would have permitted him to work at the new employer, had resigned from the
plaintiff former employer after it sought to require his assistance in prosecuting what
he believed was a retaliatory lawsuit against the new employer, and who believed
his former employer was using him as a pawn in its dispute with the new employer);
*ADP, LLC v. Pittman*, No. 19-16237, 2019 WL 5304148, at *7, 18 (D.N.J. Oct. 18,
2019) (finding a likelihood of disclosure of trade secrets where the former employee
was performing the same job functions, in the same sales territory, for the new
employer as she had for the former employer); *Nat'l Starch & Chem. Corp. v. Parker
Chem. Corp.*, 219 N.J. Super. 158, 159-62, 530 A.2d 31, 32-33 (App. Div. 1987)
(affirming lower court order enjoining former employee who worked on envelope
adhesives at former employer from working on envelope adhesives at new employer,
where employee had knowledge of, and could replicate, highly secret adhesive
formulas—which would save the new employer considerable time and effort in
development; former employee not enjoined from any other work for new
employer); *Novell Inc. v. Timpanogos Research Group Inc.*, No. 970400339, 1998
WL 177721, at *1-18, 28-29 (D. Utah Jan. 30, 1998) (finding risk of inevitable
disclosure by former employees who were the chief developers on a software
project, had misappropriated trade secrets concerning the project and tried to conceal
their misconduct, started an independent business developing the same software, lied
to a potential business partner about the source of the software, and had animus
toward former employer).

### a. ADP Does Not Proffer Any Evidence to Suggest Animus

ADP does not even assert that LaCivita has any animus against it that might motivate him to disclose such information.

### b. There is No Likelihood of Loss of Clients or Other Harms

ADP's conclusory allegations that it "stands to lose clients and prospective clients, employees, and marketing partners, as well as goodwill and referral business and revenues in an amount that cannot be readily ascertained" are insufficient to establish irreparable harm. (ECF 5-1 at 33-34.) *Hit Doctor Tri State Arsenal, LLC v. Barth*, No. 19-14579, 2020 WL 729152, at *8 (D.N.J. Feb. 11, 2020) (the "possibility of losing customers in the future" is not sufficient "evidence of irreparable harm"); *Sandhills Global, Inc. v. Garafola*, No. 19-17225, 2019 WL 4143015, at *1 (D.N.J. Aug. 30, 2019) ("unsupported and conclusory allegations" that plaintiff would "suffer irreparable harm in the form of loss of goodwill and industry reputation" are insufficient to establish irreparable harm).

These are the same conclusory and unsupported allegations that were found insufficient to warrant the issuance of a preliminary injunction in the *Levin* case. *See* Drogin Decl., Ex. A.

Furthermore, ADP's legitimate interest in clients is limited to those clients with whom LaCivita had substantive dealings at ADP. *Sandhills Global, Inc. v.*

*Garafola*, No. 19-20669, 2020 WL 1821422, at *11 (D.N.J. Apr. 10, 2020) ("an employer's 'legitimate interest[ ] would be adequately protected by a limited restraint against [a former employee's] dealing with any of [its] actual customers or prospective customers in the United States with whom [the former employee] had substantial dealings on [its] behalf while in [its] employ') (quoting *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 61 (1970)).

In his current role, LaCivita has not interacted with any of the clients with whom his group at ADP dealt. (LaCivita Decl. ¶¶ 20-21, 25-26, 37-39.) Moreover, these clients are not companies that simply decide overnight, or within a short period, to leave ADP, as ADP typically enters into 3- to 5-year contracts with them. (LaCivita Decl. ¶ 23.) It is likely that most, if not all, such clients will be under contract until long after the expiration of LaCivita's one-year covenant. (*Id.* ¶ 25.)

In addition, companies with whom LaCivita interacts at Ceridian, *i.e.*, with 10,000 or more employees, commonly issue requests for proposals ("RFPs") and invite multiple companies to bid for the companies' business. (*Id.* ¶ 28.) ADP cannot claim a goodwill interest, *i.e.*, an expectancy of future business, from clients who actively entered the free marketplace when seeking a business partner. *New Jersey Physicians United Reciprocal Exch. v. Arthur J. Gallagher & Co.*, No. 18–04110, 2018 WL 3054686, at *4 (D.N.J. June 20, 2018) (goodwill is "the expectancy of

continued patronage"). Consequently, there is no established likelihood that any clients would be lost due to LaCivita's actions.

For the foregoing reasons, ADP has failed to meet its burden that in the absence of a preliminary injunction it will suffer immediate irreparable harm.

### C.   ADP's Unexplained Delay Undermines Any Claim of Irreparable Harm

These same ADP attorneys knew in September 2021 that LaCivita was working for Ceridian. He confirmed this to them in writing on September 22, 2021. The passage of time is inconsistent with the need for injunctive relief. If immediate and irreparable harm is known to exist, prompt action must be taken. Absent a reasonable explanation, delay is unforgiving.

"'[P]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights ... tends to indicate at least a reduced need for such drastic, speedy action.'" *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *9 (D.N.J. Nov. 8, 2021) (quoting *Lanin v. Borough of Tenafly*, 515 Fed. App'x 114, 117-18 (3d Cir. 2013).

ADP knew in September that LaCivita was working for Ceridian because he told it so on September 22. (LaCivita Decl., Ex. B.) LaCivita also explained the differences between his new position and his former position at ADP. (*Id.*) ADP did nothing. (LaCivita Decl. ¶ 13.) It did not seek additional information. (*Id.*) It did not

object. (*Id.*) It did not respond at all. (*Id.*) It waited nearly two months, until November 15, to file this lawsuit and then it waited until November 17 to file this motion (which was not brought on by Order to Show Cause). (ECF 1, 5.)

ADP's counsel cannot deny that their client's application for emergency relief is belated. Yet ADP offers no explanation whatsoever to excuse this delay. "[T]he fact that Plaintiff[] waited nearly two (2) months to seek relief dispels any claim of irreparable harm." *Smith*, 2021 WL 5195688, at *9 (noting that plaintiffs had not offered an excuse for their delay). *See also CommScope, Inc. v. Rosenberger Tech. (Kunshan) Co. Ltd.*, No. 19-15962, 2021 WL 1560717, at *5 n.6 (D.N.J. Apr. 20, 2021) (two-month delay in filing a preliminary injunction application undercuts "[t]he immediacy of any harm"); *Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*, No. 19-8828, 2019 WL 1519026, at *4 (D.N.J. Apr. 8, 2019) (a month-and-a-half delay "undermines any arguments of immediate irreparable harm"); *ProFoot, Inc. v. MSD Consumer Care, Inc.*, No. 11–7079, 2012 WL 2262904, at *14 (D.N.J. June 14, 2012) (three-month delay in seeking preliminary injunctive relief "knocks the bottom out of any claim of immediate and irreparable harm"); *NASC Servs., Inc v. Jervis*, No. 07–CV–5793, 2008 WL 2115111, at *6 (D.N.J. May 19, 2008) (plaintiffs' delay in moving for injunctive relief for of two months after learning that defendants were working for a direct competitor "belie[s] the notion that any harm to Plaintiffs is imminent").

## II.   **ADP LACKS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE IT CANNOT PROVE A BREACH OF CONTRACT AND THE RECORD IS INSUFFICIENTLY DEVELOPED TO PERMIT THE COURT TO DETERMINE THE IMPACT OF CALIFORNIA'S LABOR CODE SECTION 925**

### A.   **ADP Must Show a Substantial Likelihood of Success on the Merits**

A movant for a preliminary injunction must make a showing that "it can win (which requires a showing significantly better than negligible but not necessarily more likely than not.)" *Reilly*, 858 F.3d at 179. "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* (quotation omitted). As ADP is seeking a mandatory injunction, *i.e.*, requiring LaCivita to terminate his employment with Ceridian, it bears a "particularly heavy burden . . . requiring [it] to show a substantial likelihood of success on the merits and that [its] right to relief [is] indisputably clear." *Hope v. Warden York County Prison*, 972 F.3d 310, 320 (3d Cir. 2020) (quotations omitted).

Here, as ADP's claimed irreparable harm is entirely speculative, its showing of a likelihood of success on the merits must be extremely strong. But ADP has not demonstrated a meritorious breach of contract claim. Furthermore, ADP cannot show a likelihood of success as there is a factual dispute concerning the critical question of whether the Court should apply California's Labor Code § 925 to invalidate ADP's non-compete covenant. "'A preliminary injunction cannot be issued where material

26

issues of fact are in dispute.'" *New Jersey Physicians*, 2018 WL 3054686, at \*4 (quoting *Vita–Pure, Inc. v. Bhatia*, No. 2:14–7831, 2015 WL 1496396, at \* 3 (D.N.J. Apr. 1, 2015)).

### 1. ADP's Claims Fail for Lack of Harm

"A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Rotante v. Franklin Lakes Bd. of Educ.*, No. 13–3380, 2014 WL 3778912, at \*7 (D.N.J. Jul. 31, 2014) (quotation omitted). "[D]amages claimed in a breach of contract action must be reasonably certain and not speculative." *Id.* at \*8 (quoting *Horton v. Ross Univ. Sch. of Med.*, No. 04–5658, 2006 WL 1128705, at \*9 (D.N.J. Mar.30, 2006)).

The only potential breach that ADP has identified is the fact that LaCivita is working for Ceridian, allegedly in violation of his non-compete. But as the Third Circuit has explained to ADP, "an 'employer has no legitimate interest in preventing competition as such' or simply prohibiting an employee from exercising her 'general knowledge' within the industry." *ADP, LLC v. Rafferty*, 923 F.3d 113, 121 (3d Cir. 2019) (quotation omitted). ADP has not demonstrated any harm caused by LaCivita's employment. Rather, its claimed harm is pure speculation. Consequently, ADP has failed to show that it has a likelihood of success on the merits of its claim for breach of contract. *Rotante*, 2014 WL 3778912, at \*8 ("although Plaintiff has

established both a contract and a breach of that contract, his claim cannot survive, as this Court 'shall not speculate about what damage might have resulted from the breach'") (quoting *Horton,* 2006 WL 1128705, at *9).[6]

### 2. California Labor Code Section 925 Invalidates ADP's Claim

More than two years before LaCivita signed his 2020 agreement, California enacted Labor Code § 925. Section 925 took effect on January 1, 2017 to govern contracts "entered into, modified, or extended" after that date by an "employee who primarily resides and works in California." Cal. Lab. Code §§ 925(a, f).

That statute was intended to expand California's strong abhorrence of covenants that simply serve to restrict employees from working for competitors. In an underlying statute, "[e]very contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Section 925 provided California employees with even more protection.

Aware of Section 925, but making only a single passing and conclusory reference to it in the lone footnote in its 39-page brief (*see* ECF 5-1, at 24 n.1), ADP ignores entirely the existence of Section 925—a statute that is not only directly on

---

[6]     ADP's unfair competition claim fails for the same reasons as its breach of contract claim.

point, but that goes to the heart of this Court's ability to analyze Plaintiff's ultimate likelihood of success on the merits.

Worse still, ADP quotes and cites from the wrong contract in its brief, failing to alert the Court that the 2020 agreement rectified the deficiencies in earlier agreements that did not account for Section 925. As noted above, the 2020 agreement fixes venue and choice of law in New Jersey only "[t]o the extent permitted by the law of the state in which [LaCivita] reside[s]." California does not permit it. California took the extraordinary measure of codifying its public policy to expressly state so and arm Californians with a law that enables them to recover legal fees against employers who violate the law.

ADP cites no case involving its covenants where a court has determined Section 925 does not apply.[7] This being a case of first impression, ADP cannot seriously contend that at this stage of the litigation it has a likelihood of success on the merits of this question.[8]

---

[7]   ADP notes that the 2016 agreement was signed by LaCivita on September 27, 2016 (by happenstance two days after Section 925 was signed into law). Section 925 applies to all contracts "entered into, modified, or extended" after January 1, 2017, including the 2020 agreement at issue here.

[8]   ADP relies to a great extent upon the District of New Jersey's decision in *Diversant, LLC v. Carino*, No. 18-3155, 2018 WL 1610957 (D.N.J. Apr. 2, 2018) for its purported factual similarity to the case under review. But the controversy in *Diversant* concerned the enforcement of a restrictive covenant agreement the parties executed in 2015, two years before § 925 took effect. *Id.* at *1. It follows, of course,

Moreover, the record is not sufficiently developed for the Court to make a reasoned analysis of whether California's law should be applied here.

The instant matter falls squarely within the ambit of § 925. Specifically, LaCivita has been domiciled in the state of California since 2012. (LaCivita Decl. ¶ 51). For the past decade, he has lived there, voted there, raised his family there, and—most important—worked there as an ADP employee. (*Id.*) With respect to New Jersey, at least one California court has deemed employment claims that concern an employee such as LaCivita, who resides and works primarily in California, to have arisen within the state. *See*, *e.g.*, *Pierman v. Stryker Corp.*, No. 3:19-cv-00679, 2020 WL 406679, at *1, 3 (S.D. Cal. Jan. 24, 2020) (New Jersey employer's employment claim against California resident who works in California arose in California, and so New Jersey forum selection clause is not enforceable).

Furthermore, the sole exception to coverage under the statute—that its application is limited to those not represented by counsel at the time they enter the agreement in question—does not apply to LaCivita. Cal. Lab. Code § 925(e). He did not attempt to negotiate the terms of the 2020 agreement and was unrepresented prior

---

that the statute played no role in the court's determination that the plaintiff there was likely to prevail on the merits—the central, threshold issue now before the Court. The same is true of the other pre-Section 925 cases that ADP cites from outside this Circuit, *Amazon.com, Inc. v. Powers*, No. C12–1911RAJ, 2012 WL 6726538 (W.D. Wash. Dec. 27, 2012) and *CH20, Inc. v. Bernier*, No. C11–5153RJB, 2011 WL 1485604 (W.D. Wash. April 18, 2011).

to its execution. (LaCivita Decl. ¶ 51.) At a minimum, there is a factual dispute here as to whether § 925 prohibits the enforcement of ADP's covenants, and that factual dispute operates to defeat the motion before the Court.

For the foregoing reasons, the Court should conclude that ADP has failed to establish a likelihood of success on the merits.

### III.   <u>AN INJUNCTION WOULD CAUSE GREATER HARM TO LACIVITA THAN TO ADP</u>

In view of ADP's failure to show that it would be irreparably harmed absent injunctive relief, or that it has a likelihood of success on the merits of its claims, the Court need not consider the remaining preliminary injunction factors. But even the Court it does consider them, both favor denying ADP's request for a preliminary injunction.

ADP's actual harm is zero and any potential harm is entirely speculative. A preliminary injunction will cause immediate harm to LaCivita by depriving him of the ability to earn a living. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 119 (3d Cir. 2010) ("even a temporary injunction prohibiting someone from pursuing his livelihood in the manner he chooses operates as a severe restriction on him that a court should not impose lightly," and should only be imposed on a strong showing of irreparable harm).

Judge Wigenton adopted this reasoning in *Levin*: "The inability to pursue a livelihood is a very significant restriction, and the courts frown upon that being

imposed unless there are clear and unequivocal issues that are before the Court that would justify such a restriction." (Drogin Decl., Ex. A at 43.) Just as ADP's former Chief Strategy Officer was permitted to remain working for a competitor so, too, should LaCivita. ADP presents this Court with no additional facts that should dictate a departure from this result.

## IV.   THE PUBLIC INTEREST DISFAVORS THE REQUESTED INJUNCTIVE RELIEF

The Third Circuit recognizes "there is a public interest in employers being free to hire whom they please and in employees being free to work for whom they please." *Bimbo Bakeries*, 613 F.3d at 119. Judge Wigenton found this to be a neutral factor in *Levin*, explaining "the public has an interest in contracts being honored, and also the public has an interest in people being able to work." (Drogin Decl., Ex. A at 44.)

We submit here that ADP's overt disregard for its own contract language and the rights of its California employees must also be considered. ADP maintains 15 offices in California, the most it has in any State. (https://www.adp.com/about-adp/office-locations.aspx.) It may well be that California is home to the most ADP employees in the country. Those employees presumably account for a material amount of ADP's revenue. To the extent ADP disputes these facts, they are additional open issues that must be resolved before the issuance of a preliminary injunction can even be considered.

It is one thing for ADP to include a choice of venue and choice of law provision in its agreements. It is another when ADP attempts to enforce those provisions against a California citizen, when California has taken the extraordinary measure of codifying the rights of its citizens to be free from such terms of employment. Further still is the case we have here, where ADP's own contract recognizes an exception to enforcement where an employee's state does not permit ADP's choice of venue or choice of law provision, but ADP scoffs at its own contracts and still tries to enforce them.

California has made clear that its interest is in protecting its citizens working in California from being compelled to litigate non-compete agreements beyond its borders and under the laws of a different state.

At this stage in the litigation, California has the greater interest, particularly where its public policy emphatically provides that Californians should not be deprived of the application of their state's law and venue.

## Conclusion

For all of the foregoing reasons the Court should deny the request for injunctive relief and all other relief sought by ADP's motion.

December 13, 2021                TARTER KRINSKY & DROGIN LLP

By:    s/ *Laurent S. Drogin*

33

Laurent S. Drogin (Bar No. 028951990)
David N. Kleinmann (Bar No. 0445322004)
Jonathan S. Hershberg (Bar No. 023832010)
1350 Broadway
New York, NY 10018
Tel.: (212) 216-8000
Fax: (212) 216-8001
ldrogin@tarterkrinsky.com
dkleinmann@tarterkrinsky.com
jhershberg@tarterkrinsky.com

***Attorneys for Defendant Rocco LaCivita***