UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ADP, INC.,**　　*Plaintiff,*　　v.　　**ROCCO LACIVITA,**　　*Defendant.* | **Civil Action No. 21-20001**　　**ORDER** |

**THIS MATTER** comes before the Court by way of Plaintiff ADP, INC.'s ("ADP" or "Plaintiff") Motion for Preliminary Injunction to enjoin former ADP employee, Defendant Rocco LaCivita ("LaCivita" or "Defendant"), from breaching his multiple restrictive covenant agreements with ADP, ECF No. 5;

and it appearing that LaCivita opposes the Motion, ECF No. 20;

and it appearing that LaCivita began working at ADP in October 2004 as a sales associate, and held various sales-related roles before eventually accepting a position as Sales Executive, Global Enterprise Business Process Outsourcing ("BPO"), which he held until he resigned from ADP in September 2021, Compl. ¶¶ 12-16, ECF No. 1;

and it appearing that in his role as Sales Executive in the BPO space, LaCivita oversaw a team of seven sales associates assigned to support field sales personnel by aiding their sales of additional BPO services, mostly to existing ADP customers, ECF No. 71.1, Deposition Transcript of Jennifer Webb ("Webb Tr.") 21:10-24:2, 187:10-190:18; ECF No. 71.2, Deposition Transcript of Sam Gambill ("Gambill Tr.") 18:3-19:9; Compl. ¶ 21;

1

and it appearing that while employed by ADP, LaCivita and his team solicited and pursued clients and prospects with between 1,000 and 10,000 employees, Webb Tr. 28:21-23; ECF No 71.3, Rocco LaCivita Deposition Transcript ("LaCivita Tr.") 46:9-10;

and it appearing that LaCivita and his team's "territory"[1] comprised ten states: California, Utah, Arizona, Colorado, Idaho, Oregon, Washington, Wisconsin, Illinois, and Nevada (the "Ten States"), ECF No. 5.4, Declaration of Jennifer Webb ("Webb Decl.") ¶ 5; Webb Tr. 194:15-21;

and it appearing that throughout his employment with ADP, LaCivita executed numerous Restrictive Covenant Agreements ("RCAs") with ADP, including in 2016, 2017, 2018, 2019, and 2020, Compl. ¶ 2;

and it appearing that in exchange for executing the RCAs, LaCivita accepted an award of restricted stock that was only offered to certain high-performing employees who met their sales targets, id. ¶¶ 27, 29;

and it appearing that the RCAs included certain non-solicitation, non-disclosure, and non-use restrictive covenants, as well as non-compete covenants prohibiting LaCivita, for a period of twelve months following his employment with ADP, from being employed by an ADP competitor where LaCivita would provide the same or substantially similar services within the same territory as the services he provided while working at ADP, id. ¶ 30; ECF No. 1.1;[2]

---

[1] "Territory," as defined by the RCAs, means the geographic area where LaCivta worked, represented ADP, or had material business contact with ADP's clients in the two-year period preceding the end of his employment with ADP. ECF No. 1.1 at 4. Even though LaCivita acted in a managerial role, ADP claims that he still had a "territory" that aligned with his sales representatives' territories. Webb Tr. 177:18-180:20.

[2] Specifically, the non-compete provision in the RCA states the following:

> Non-Competition. I agree that during my employment and for a period of twelve (12) months from the voluntary or involuntary termination of my employment for any reason or no reason, and with or without cause or for no cause, I will not, directly or indirectly, own, manage, operate, join, control, finance, be employed by or with, or participate in any manner with a Competing Business anywhere in the Territory where I (i) will provide the same or similar services to a Competing Business as those which I provided to ADP while employed, or (ii) use, disclose or disseminate ADP's Confidential Information or trade secrets. However, after

and it appearing that on September 7, 2021, LaCivita resigned his position with ADP and began employment with Ceridian HCM Holding Inc. ("Ceridian") as Division Vice President Large Enterprises, Compl. ¶¶ 1, 38, 44;

and it appearing that while LaCivita does not dispute that Ceridian is a "competing business"[3] under the RCAs, LaCivita claimed to ADP that his "role and territory differ significantly [at Ceridian] from the role [he] held at ADP," id. ¶ 44; ECF No. 1.3;

and it appearing that at Ceridian, LaCivita manages a team of sales account executives that focus on large companies that are headquartered in the United States and have a global presence with over 10,000 employees, LaCivita Tr. 28:25-29:17; ECF No. 1.3;

and it appearing that LaCivita supports his sales account executives on deals, which includes interacting with prospective clients and developing strategies, LaCivita Tr. 45:7-17; 73:19-25;

and it appearing that when LaCivita began working at Ceridian, he had no geographic limitations, LaCivita Tr. 42:20-25, and his sales account executives had clients and prospective clients in California, Washington, and Oregon, and possibly a few of the other Ten States from his ADP territory, id. 43:12-44:21;

and it appearing that ADP alleges that LaCivita's employment with Ceridian violates the RCAs because LaCivita provides the same or substantially similar services to Ceridian in the prohibited geographic territory, Compl. ¶¶ 41, 45-49; ECF No. 71 ("Pl. Sup. Br.") at 7, 9;

---

the voluntary or involuntary termination of my employment for any reason and with or without cause, nothing shall prevent me from owning, as an inactive investor, securities of any competitor of ADP which is listed on a national securities exchange.

[3] In relevant part, "competing business" means "any . . . corporation that is engaged in any business or enterprise that is the same as, or substantially the same as, that part of the Business of ADP in which" the employee worked or was exposed to while employed by ADP. ECF No. 1, Ex. 1.

3

and it appearing that ADP further alleges that LaCivita's knowledge of product information, market strategies, ADP client and prospective client positioning, ADP's sales team and employee information, ADP's products and services, territory knowledge, territory information, competitive detail about clients and prospective clients, overall strategies concerning ADP alliances, ADP's business, and geographies serviced across markets poses significant risk to ADP now that LaCivita is providing substantially similar services to a competitor, Webb Tr. 111:25-112:13; see also Webb Decl. ¶¶ 6, 10-11, 13-14;

and it appearing that on November 15, 2021, ADP filed a two-count Complaint asserting breach of contract and unfair competition, and requesting injunctive relief and money damages, see Compl.;

and it appearing that ADP filed a Motion for Preliminary Injunction two days later, ECF No. 5;

and it appearing that on January 26, 2022, the Court held oral argument on the Motion for Preliminary Injunction and ordered the parties to conduct limited discovery on LaCivita's territory and file supplemental briefs, ECF No. 63; see ECF Nos. 71-73;

and it appearing that in the supplemental submissions, LaCivita advised that in January 2022, Ceridian restructured LaCivita's accounts to exclude the Ten States from his geographic reach in order to prevent any conflict with ADP, LaCivita Tr. 36:18-37:8; 41:10-25-42:19;

and it appearing that a preliminary injunction is an "extraordinary remedy" that is never to be awarded as of right, Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008);

and it appearing that the Court must consider four factors: (1) whether ADP is likely to succeed on the merits, (2) whether ADP is likely to suffer irreparable harm in the absence of

preliminary relief, (3) whether the balance of equities tips in ADP's favor, and (4) whether an injunction is in the public interest, id. at 20;

and it appearing that each element must be established by a "clear showing," Mazurek v. Armstrong, 520 U.S. 968, 972 (1997), and that the first two factors are essential, see Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000);

and it appearing that ADP argues that the four preliminary injunction factors weigh in its favor and asks the Court to enjoin LaCivita (1) from working or performing substantially similar services for Ceridian or any competitor in the Ten States for a period of twelve months; (2) from soliciting for a period of twelve months ADP's actual or prospective clients with whom he had substantial dealings or about whom he learned or gained knowledge while employed by ADP; (3) from using or disclosing ADP's confidential, proprietary, or trade secret information; (4) from violating the terms and conditions of the RCAs; (5) from interfering with any current or prospective client or marketing partner relationship of ADP; (6) to immediately return all ADP property to ADP; and (7) from destroying or disposing of anything in his possession relating to or concerning this litigation, ECF No. 5.5;

and it appearing that LaCivita maintains that ADP has not met its burden and that injunctive relief is not merited;

and it appearing that, under New Jersey law, the enforceability of the RCAs depends upon whether the RCAs protect ADP's legitimate business interests, will cause undue hardship on LaCivita, or will impair the public interest, ADP, LLC v. Rafferty, 923 F.3d 113, 121 (3d Cir. 2019) (quoting Solari Indus., Inc. v. Malady, 55 N.J. 571 (1970));[4]

---

[4] The parties dispute whether New Jersey or California law applies. ADP argues that the RCA contains an enforceable New Jersey choice of law and forum selection clause, whereas LaCivita argues that the RCA requires the Court to apply Section 925 of the California Code, which requires ADP to adjudicate the claims in California and with the protection of California law. The Court is satisfied that New Jersey law applies here.

and it appearing that courts have acknowledged that ADP's "legitimate and protectable interest in its customer relationships" is "sufficient to justify enforcement of its RCA," see ADP, LLC v. Kusins, 460 N.J. Super. 368, 404 (App. Div. 2019); Rafferty, 923 F.3d at 123, and that ADP has a "legitimate business interest in imposing the RCA restrictions on its best-performing employees, who have been commensurately rewarded with a stock bonus," ADP, LLC v. Pittman, No. 19-16237, 2019 WL 5304148, at *15 (D.N.J. Oct. 18, 2019);

and it appearing that ADP's imposition of the RCAs to limit the spread of its trade secrets and confidential information, and to otherwise limit the damages arising from turnover of some of its most effective employees, is a reasonable means of furthering a legitimate business purpose, see id. at *15;

and it appearing that the RCAs are reasonably tailored to protect ADP's interests[5] while ensuring LaCivita's ability to continue working for Ceridian—and in fact, they impose seemingly no undue burden on him as he no longer has overlap with his former territory;

---

First, a California court denied LaCivita's Temporary Restraining Order application because it found that he is not likely to prevail on the merits, suggesting that it already found that Section 925 does not apply to this action. ECF No. 24.

Second, while courts applying California law have invalidated forum selection clauses under Section 925, there is "no legal authority for a federal court sitting in New Jersey, considering a contract which, by its terms, is to be interpreted in accordance with the laws of New Jersey, to consider California law when determining the enforceability of a 'presumptively valid' forum selection clause." Howmedica Osteonics Corp. v. Howard, No. 19-19254, 2020 WL 1082601, at *1 (D.N.J.), report and recommendation adopted, 2020 WL 1082601 (D.N.J. Mar. 5, 2020). "New Jersey choice-of-law rules provide that ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice." Id. (quotations omitted); see also Willis v. Herriott, No. 21-487, 2021 WL 3204764, at *13-19 (S.D.N.Y. July 22, 2021) (holding that the defendant's argument that Section 925 rendered the choice-of-law and forum-selection provisions in his RCAs void required little discussion because a New York court exercising diversity jurisdiction would apply New York choice-of-law rules, which resulted in application of New York law). There is no reason here to depart from the parties' contractual choice and this Court is satisfied that New Jersey law governs this dispute.

[5] To the extent LaCivita argues that the Court should differentiate his position or his geographic limitations based on client size, this "market segment theory" has been expressly rejected by New Jersey courts. See, e.g., Kusins, 460 N.J. Super. at 407.

6

and it appearing that, under the final Solari factor, this case imposes no major public component as the public interests are generic and balanced, see Rafferty, 923 F.3d at 127; Pittman, 2019 WL 5304148, at *17;

and it appearing that the Court finds that LaCivita works for a competitor in a role "substantially similar" to the one he held at ADP and that there was some period of time at Ceridian that LaCivita may have worked in at least a few of the Ten States, rendering him in violation of his non-compete with ADP;

and it appearing that ADP has thus shown a likelihood of success in its attempt to enforce the RCA;[6]

and it appearing that ADP must next demonstrate that it faces irreparable harm if an injunction is not granted;

and it appearing that "the plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial," Siemens USA Holdings Ing v. Geisenberger, 17 F.4th 393, 408 (3d Cir. 2021) (quoting Campbell Soup v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992));

and it appearing that "the threatened harm 'must not be speculative'" going forward, "the court can and must determine whether the moving party has established 'that it specifically and personally risks irreparable harm' to succeed on this factor," ADP, Inc. v. Levin, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022) (quoting Adams, 204 F.3d at 487-88 & n.13), and "[c]ourts have long required that a party seeking preliminary relief produce affirmative

---

[6] The only provision of the RCA that appears to be in dispute is the "non-compete" clause referenced above. Plaintiff has not claimed that LaCivita has solicited any ADP clients since leaving its employ, so the Court does not address the "non-solicitation" clause or any other provision in the RCA.

evidence indicating that he or she will be irreparably harmed should that relief be denied," Levin, 2022 WL 1184202, at *2 (quoting Marxe v. Jackson, 833 F.2d 1121, 1127 (3d Cir. 1987));

and it appearing that ADP argues generally that the irreparable harm it will suffer is the loss of existing and prospective clients, employees, marketing partners, confidential and proprietary information, customer goodwill, and referral business and revenues;

and it appearing that ADP points to absolutely no evidence that LaCivita has inappropriately contacted ADP clients or prospective clients, used ADP's confidential information, violated his non-solicitation clause, or done anything to harm ADP other than having a brief period of potential overlap in territories—which no longer exists, Webb Tr. 74:15-21, 109:20-129:14, 146:16-147:13;[7]

and it appearing that LaCivita is no longer working in the restricted territory, and that there is no evidence that LaCivita has been in violation of the RCA's non-compete since January 2022, that he plans to resume conducting business in any of the Ten States in the immediate future, or that he has inappropriately targeted ADP clients or prospective clients or misused its information or plans to in the future;[8]

---

[7] While evidence of past harm is not necessary to establish irreparable harm, it may be helpful to establish a non-speculative risk of future harm. See, e.g., Adams, 204 F.3d 475, 488 & n.13 (3d Cir. 2000) (noting the requirement that a risk of future harm be non-speculative and collecting cases); Levin, 2022 WL 1184202, at *2 n.2.

[8] ADP additionally argues that the "inevitable disclosure doctrine" applies here. ECF No. 5, Pl. Br. at 34-35 (stating that the doctrine "provides that 'an employer need not establish that its former employee has actually used or disclosed trade secrets . . . [r]ather, an employer may demonstrate that 'there is a sufficient likelihood of inevitable disclosure of its trade secrets to a competitor[]' to show 'irreparable harm' not adequately remedied by money damages." (quoting Osteotech, Inc. v. Biologic, LLC, No. 07-1296, 2008 WL 686318, at *3 (D.N.J. Mar. 7, 2008))). Here, there is no evidence that LaCivita has previously misused ADP's information and, unlike in Pittman, the employee has ceased working in the defined geographical prohibited territory and thus ADP cannot demonstrate that there is sufficient likelihood of inevitable disclosure in the future. Any claims of future harm are beyond speculative at this juncture.

and it appearing that the Court therefore finds that there is no showing of irreparable harm[9] and that a preliminary injunction simply is not justified;[10]

**IT IS** on this 30th day of June, 2022;

**ORDERED** that Plaintiff's Motion for Preliminary Injunction is **DENIED**.

*/s/ Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[9] Given ADP's failure to demonstrate irreparable harm, the Court need not discuss the final two factors.

[10] To the extent LaCivita plans, on or before January 2023, to resume working in one of the Ten States which was part of his ADP territory, the Court directs Defendant's counsel to provide seven days' notice to ADP so it can take steps to renew any application with the Court, if appropriate.